IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| The ERISA Industry Committee,<br>                Plaintiff,<br>    v.<br>United States Department of Health and Human Services, *et al.*,<br>                Defendants. | Case No. 25-cv-136-TJK |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT**

Plaintiff The ERISA Industry Committee ("ERIC") brought this suit to challenge the "Parity Rule," a major final rule issued in the waning months of the last Administration by the Departments of Health and Human Services, Treasury, and Labor (collectively, "the Departments"). 89 Fed. Reg. 77,586 (Sept. 23, 2024) (the "Rule"). The Rule fundamentally, and unlawfully, reshapes the requirements for health plans that cover the diagnosis and treatment of mental health and substance use disorders. And it is already imposing substantial compliance costs on employers that offer those plans, including many of ERIC's members.

To spare employers from these costs while the Rule is in litigation, ERIC asked the Departments more than five weeks ago—on February 14—to stay the rule pursuant to 5 U.S.C. § 705. That request remains pending. Accordingly, when the Departments requested an extension of their time to respond to the complaint, ERIC offered to stipulate to an extension if the Departments would grant the stay. Alternatively, ERIC offered to waive the Departments' obligation to answer the complaint. Instead—without mentioning either offer—the Departments ask this Court for 90 more days to file that answer, on top of the 60 days they already have by default.

1

That gambit by the Departments—"relief for me but not for thee"—is unreasonable and should be rejected. If the Departments persist in declining ERIC's offers, they should file any response to the complaint within two weeks, by April 7, 2025.

A 90-day extension absent a stay is inappropriate, first and foremost, because costly and unlawful parts of the Rule are already in effect. Those include the Rule's requirement that plans collect massive amounts of data regarding plan mental health and substance use disorder ("MH/SUD") benefits and perform extensive "comparative analyses" using that data based on amended definitions of key terms that are foundational to how plans structure their benefits. *See* Dkt. 1 ¶¶ 106-10, 122. These parts of the Rule took effect January 1, 2025, *see* 89 Fed. Reg. at 77,652/3-77,653/2, so plans are already spending millions of dollars each day to come into compliance. By the Departments' own estimates, the Rule will cost regulated parties nearly ***$700 million in 2025 alone***. *Id.* at 77,661 tbl. 1.

Moreover, the January 1, 2025 applicability date—which came less than four months after the final Rule issued—affords plans "too little time to take the steps necessary to come into compliance." Dkt. 1 ¶ 137. The vast majority of employer-sponsored group health plans operate on a calendar-year basis and thus set plan terms, premiums, and perform other actuarial analyses for a given year based on what benefits will be covered for the following year. *Id.* ¶ 124. Plans make these determinations many months in advance of open enrollment, which occurs at or near the end of each year. *Id.* If coverage provisions for 2025 need to be changed pursuant to the Rule's comparative analyses, it will likely be too late for plans to alter their 2025 plan terms or premiums, meaning that plans will be undercompensated for the services they provide. *Id.* ERIC has thus challenged the January 1, 2025 applicability date for these provisions as arbitrary and capricious.

*Id*. ¶¶ 122-24, 137.  Delaying this litigation would deprive ERIC of relief on that claim until it is too late to fully remedy ERIC members' injuries.

The Rule's remaining provisions—which are scheduled to take effect January 1, 2026—also weigh strongly against the Departments' requested extension.  These include provisions like the requirement that plans provide "meaningful" MH/SUD benefits—a requirement that takes direct aim at a central tenet of the statutes the Rule implements (the Mental Health Parity and Addiction Equity Act and the Employee Retirement Income Security Act) that neither Congress nor federal regulators may dictate the particular benefits a company must offer its employees.  Dkt. 1 ¶¶ 78-82.  Although these requirements do not formally take effect until January 1, 2026, open enrollment for 2026 will take place for most plans in late 2025.  Plans are already beginning to make important determinations and investments several months in advance of open enrollment.  A 90-day delay for the government merely to file an answer, and the consequent delay in the litigation as a whole, would prevent ERIC members from obtaining timely relief from these costs before they are incurred.

Ironically, the Departments' principal grounds for an extension appear to be that the Departments themselves are re-evaluating the Rule's appropriateness.  *See* Dkt. 12 ¶ 3 (stating that "new … officials" at the Department of Labor, "which ha[s] primary responsibility for" the Rule, are ***"determin[ing] how they wish to proceed regarding the [Rule]***, and accordingly this litigation") (emphasis added).  But the government's recognition that the Rule could be problematic—and therefore could impose millions of dollars in unwarranted costs daily—is a reason for a stay, not for an extension of the day by which ERIC may ultimately obtain relief from this Court.  Nor, respectfully, is the Departments' evident current uncertainty, or a lawyer's busy

3

schedule, reason to extend the period that American businesses incur millions upon millions in needless costs.

In these circumstances, the Departments' request for a three-month delay is self-evidently unreasonable. Instead, absent a stay, the litigation should move forward expeditiously. To lessen the immediate burden on the Department without delaying the litigation, ERIC remains willing to waive the Departments' obligation to file an answer. But if the Departments persist in rejecting that offer, they should have to file any response to the complaint within two weeks—*i.e.*, by April 7, 2025—in the absence of a stay. ERIC, for its part, reserves all other rights, including to seek expedited relief from the Court if the stay request is not soon granted by the Departments.

## CONCLUSION

The Court should deny the Departments' motion and should order the Departments to file any response to the complaint no later than April 7, 2025, unless they agree to a stay of the Rule.

Dated: March 24, 2025

Respectfully submitted,

/s/ Eugene Scalia
Eugene Scalia (D.C. Bar No. 447524)
Matthew S. Rozen (D.C. Bar No. 1023209)
Rebecca E. Smith (D.C. Bar No. 166610)
Robert A. Batista (D.C. Bar No. 1618522)
Aaron Gyde (D.C. Bar No. 17197525)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street N.W.
Washington, D.C. 20036-4504
Telephone: (202) 955-8500
EScalia@gibsondunn.com
MRozen@gibsondunn.com
BSmith@gibsondunn.com
RBatista@gibsondunn.com
AGyde@gibsondunn.com

*Counsel for Plaintiff*